UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED BUILT HOMES, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-722-J |
| | ) |
| DALE EARLY "TREY" MIDDLETON, III, et al., | ) |
| | ) |
| Defendants. | ) |

# ORDER

Currently pending is Plaintiff's partial motion for summary judgment (Pl.'s Mot.) [Doc. No. 81]. Defendants responded (Defs.'s Resp.) [Doc. No. 103] and Plaintiff replied [Doc. No. 107]. For the reasons discussed below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## I.   Relevant Background

In simplest terms, United Built Homes, L.L.C. (UBH) alleges that while Defendant Middleton was still working at UBH he created and/or was employed by competing companies and continued operating and/or working for competing companies after his termination. Plaintiff filed suit against Defendant Middleton, and his companies Insideout Construction Services, L.L.C. (Defendant Insideout) and 10 Roofing and Construction, Inc., (Defendant 10 Roofing) alleging: (Count One) breach of fiduciary duty; (Count Two) unfair competition; (Count Three) violation of the Defend Trade Secrets Act; (Count Four) violation of the Oklahoma Uniform Trade Secrets Act; (Count Five) misappropriation; (Count Six) violation of the Computer Fraud and Abuse Act; (Count Seven) tortious interference with contract and prospective economic advantage; (Count

Eight) conspiracy; (Count Nine) unjust enrichment; and, (Count Eleven) unfair competition and false advertising. (Amend. Compl.) [Doc. No. 57].[1]

Plaintiff's motion for summary judgment is limited to Counts One, Seven, and Eight. *See* Pl.'s Mot. at 21.[2]

## II.  Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. 2020). The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant carries the initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible [at trial] from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citation omitted). A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Id.* at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"'[T]he relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1179 (10th Cir. 2007) (citation and internal quotation marks omitted). Under such a review, the Court "'construe[s] the factual record

---

[1] Count Ten simply request injunctive relief. *See* Amend. Compl. at 27-28.

[2] All page citations refer to this Court's CM/ECF pagination.

and the reasonable inferences therefrom in the light most favorable to the nonmoving party.'"

*Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1249 (10th Cir. 2020).

### III.   Findings of Undisputed Facts

Based on the parties' briefs and reincorporating its previous findings of fact, *see* [Doc. No. 38],[3] the Court finds the following material facts are undisputed.

UBH is a homebuilder and financing organization operating in numerous states. UBH has developed and utilizes confidential and proprietary information, including, but not limited to, customer and potential customer leads, contractual and financing agreements, pricing information and strategies, designs, drawings, etc.

Defendant Middleton began working for UBH in June 2013, eventually serving as sales manager from March 2017 to June 2020 and then serving as a sales associate thereafter. In his capacity as sales manager, Defendant Middleton supervised sales and administrative staff, signed checks on UBH's behalf, oversaw payments to subcontractors, was authorized to enter subcontracts, and attended closings and executed closing documents on UBH's behalf.

In October 2017, Defendant Middleton created Defendant Insideout and Defendant Insideout applied to be an approved subcontractor for UBH. Defendant Middleton disguised his involvement by listing Defendant Insideout's owner as "Jacob Allen" and providing UBH with the requisite forms signed under the name "Jacob Allen" because he knew UBH "would not have approved [Insideout's application to become a subcontractor] if [the company] knew that Trey Middleton was the owner of Insideout." Pl.'s Mot., Ex. 2 at 27.

---

[3] In ruling on a motion for summary judgment, the Court may consider both the cited evidence and "other materials in the record." Fed. R. Civ. P. 56(c)(3).

From October 2017 to December 2019, Defendant Middleton – on UBH's behalf – hired Defendant Insideout to perform subcontracting work for UBH. Ultimately, UBH paid Defendant Insideout $139,752.53. All the subcontracting work was completed; however, Defendant Middleton filed no tax documents and kept no financial records regarding the total compensation paid to Defendant Insideout's laborers.

In March 2020, Defendant Middleton created Defendant 10 Roofing but listed his girlfriend Stacey George as the owner.[4] Defendant 10 Roofing's primary business is home building. In April 2020, Defendant Middleton also began working for Go Mortgage. Defendant Middleton's duties with Go Mortgage included getting builders approved to use Go Mortgage's one-time close construction financing.

In the summer of 2019, John and Laurie Morris contacted UBH through its website to request a brochure and on March 9, 2020, met with UBH representatives – including Defendant Middleton – to discuss building a UBH home with either the UBH Texas Plan or the UBH Aspen Plan. On March 10, 2020, Laurie Morris executed a proposal indicating an intent to build a UBH home, and on March 30, 2020, Defendant Middleton emailed himself a scanned copy of the UBH Texas Plan and the pricing information for the Morris's home. Thereafter, Defendant Middleton met John and Laurie Morris on their land and informed them that UBH takes longer than it claims to build a home and that Defendant 10 Roofing could complete the home faster and for $8,000.00

---

[4] Plaintiff alleges Defendant Middleton made a social media post regarding the creation of Defendant 10 Roofing in March 2020. *See* Pl.'s Mot. at 12. In response, Defendant Middleton claims the social media post was made in June 2020. *See* Defs.'s Obj. at 4. Regardless of when the post was made, Defendant Middleton averred in a previous affidavit that he formed Defendant 10 Roofing "[o]n or around March 1, 2020." [Doc. No. 18, Ex. 1 at 2].

less.[5]  On April 9, 2020, the Morrises terminated their relationship with UBH in favor of Defendant 10 Roofing and a few days later, Defendant Middleton scanned a copy of the Morris's UBH house plan.  Defendant 10 Roofing eventually built the Morris's home using that UBH plan, with handwritten modifications, which Defendant Middleton altered to remove the UBH label.[6]

Also in the summer of 2019, Edwina Gregory contacted UBH and after speaking with a UBH representative, toured UBH homes in her area.  Ms. Gregory chose the UBH Aspen 60 Plan.  However, in July 2019 a UBH representative told Ms. Gregory that she would need to improve her credit to qualify for financing.  Defendant Middleton was assigned to Ms. Gregory in August 2019 and in January 2020, she executed a proposal to have UBH build her a home with the UBH Aspen 60 Plan.  At the same time, Ms. Gregory was presented with a copy of the UBH Aspen 60 Plan which she signed.  Later that month however, UBH sent Ms. Gregory a letter denying her request for financing.  Defendant Middleton then informed Ms. Gregory that he could find her

---

[5] Plaintiff presents an affidavit from Ms. Morris stating that Defendant Middleton told her Defendant 10 Roofing could build her home for $8,000.00 less than UBH.  *See* Pl.'s Mot., Ex. 30. Defendant Middleton purports to dispute this fact but offers no evidence to rebut Ms. Morris' affidavit, stating only that he "does not have any knowledge regarding these statements." Defs.'s Obj. at 4.  Further, Defendant Middleton's attached affidavit does not dispute the fact.  *See id.*, Ex. 1.  Accordingly, the Court finds that Defendant Middleton has not carried his burden of disputing this material fact.  *See supra* at 2.

[6] Defendant Middleton purports to deny this fact but his statement claims only that he used a "customized plan." Defs.'s Obj. at 5 & Ex. 1.  However, in his sworn deposition, the following exchange took place:

| | |
|---|---|
| Attorney: | This is a copy of the UBH Morris plans that you produced in this case; correct? |
| Middleton: | It appears to be. |
| Attorney: | In this instance, the UBH label is removed; correct? |
| Middleton: | Correct. |
| Attorney: | Did you remove the UBH label? |
| Middleton: | Yeah.  I probably whited it out and made a copy of it. |

Pl.'s Mot., Ex. 2 at 52.

outside financing and referred her to Go Mortgage. Go Mortgage financed Ms. Gregory's home and Defendant 10 Roofing built her home. The plans Defendant 10 Roofing used to build Ms. Gregory's home include her January 2020 signature but the plan name and UBH letterhead are missing. Otherwise, the plan is identical to UBH's Aspen 60 Plan save for some minor modifications. In the bottom corner, the plan reads: "This drawing and design is the property of United-Built Homes."[7] Pl.'s Mot., Ex. 43 at 2.

Defendant Middleton ceased working at UBH on or around June 20, 2020.

## IV.  Analysis

For the reasons discussed below, the Court both grants and denies Plaintiff's motion for summary judgment.

### A.  Breach of Fiduciary Duty (Count One)

Plaintiff alleges Defendant Middleton breached his fiduciary duty to UBH through his conduct related to Defendant Insideout and Defendant 10 Roofing. The Court agrees.

#### 1.  Elements for Breach of Fiduciary Duty

To establish a breach of fiduciary duty under Oklahoma law,[8] Plaintiff must prove "(1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of a

---

[7] Defendant Middleton disputes that he used the same plans attached to Ms. Gregory's original proposal; however, in a prior affidavit, Defendant Middleton averred that "[A UBH employee] provided [Ms. Gregory] with designs for a home during the application process, which she then provided to me with changes." [Doc. No. 18, Ex. 1]. So, while the question of whether Ms. Gregory gave the UBH plans to Defendant 10 Roofing or whether Defendant Middleton provided the plans remains in dispute, it is undisputed Defendant 10 Roofing constructed Ms. Gregory's home using UBH proprietary materials.

[8] The Court's jurisdiction is predicated upon the complete diversity of the parties, pursuant to 18 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00. "A federal court sitting in diversity . . . must apply the substantive law of the forum state[.]" *Otis Elevator Co. v. Midland Red Oak Realty Inc.*, 483 F.3d 1095, 1101 (10th Cir. 2007).

fiduciary duty was the direct cause of damages." *Graves v. Johnson*, 359 P.3d 1151, 1155 (Okla. Civ. App. 2015).

Although it has not formally adopted it, Oklahoma clearly "looks to the Third Restatement of Agency for the various fiduciary duties that agents owe their principals." *Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *8 (W.D. Okla. Dec. 8, 2017) (citing Oklahoma Uniform Jury Instruction 27.3); *see also ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1193 (W.D. Okla. 2019) (holding that while Oklahoma has not adopted the Third Restatement of Agency in case law, it has specifically referenced the treatise in its Uniform Jury Instructions).

### 2. The Existence of a Fiduciary Relationship

Plaintiff must first prove that a fiduciary relationship existed between itself and Defendant Middleton. The Court finds it has succeeded on this element.

Generally, an employee owes his or her employer a basic duty of loyalty. *See* Restatement (Third) Of Agency § 8.01 (2006) ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship."). And "higher-level employees such as managers or others in positions of authority or confidence are subject to higher fiduciary standards distinct from the basic duty of loyalty." *Blue Star Land Servs., LLC*, 2017 WL 6210901, at *8 (quoting in a parenthetical Restatement of Employment Law § 8.01 TD No 3 (2010)).

Here, the undisputed evidence establishes that Defendant Middleton was a supervisor at UBH during the relevant time and had authority to access confidential information, hire subcontractors, execute checks, etc. *See supra* at 3. Accordingly, the Court finds Plaintiff has established as a matter of law that Defendant Middleton had a fiduciary relationship with UBH. *See Blue Star Land Servs., LLC*, 2017 WL 6210901, at *8.

### 3. Breach of the Fiduciary Duty

Because Defendant Middleton and UBH had a fiduciary relationship, Defendant Middleton owed UBH various duties of loyalty as defined in the Restatement (Third) of Agency, including (1) the duty "to act loyally for the principal's benefit in all matters connected with the agency relationship" (§ 8.01); (2) "a duty not to acquire a material benefit from a third party in connection with transactions conducted or other actions taken on behalf of the principal or otherwise through the agent's use of the agent's position" (§ 8.02); (3) "a duty not to deal with the principal as or on behalf of an adverse party in a transaction connected with the agency relationship" (§ 8.03); (4) "a duty to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors" (§ 8.04); and (5) "a duty ([a]) not to use property of the principal for the agent's own purposes or those of a third party; and ([b]) not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party." (§ 8.05).

According to Plaintiff, Defendant Middleton breached these fiduciary duties[9] as it relates to: (1) his creation and hiring of Defendant Insideout for subcontracting work and (2) his creation and subsequent competition with UBH with Defendant 10 Roofing.

#### a. Defendant Insideout

The undisputed facts establish that Defendant Middleton created Defendant Insideout and intentionally disguised his ownership of the company when he applied to have Defendant Insideout

---

[9] In addition to the duties of loyalty, UBH also invokes the duties of performance as discussed in Restatement (Third) of Agency §§ 8.07-8.12. *See* Pl.'s Mot. at 23. However, based on the findings made below, the Court declines to address every duty Defendant Middleton allegedly breached or every wrongdoing Defendant Middleton alleged committed.

8

perform subcontracting work for UBH. Then in his capacity as UBH's agent, Defendant Middleton hired and ultimately paid Defendant Insideout $139,752.53.

Even construing the evidence in a light most favorable to Defendant Middleton, the Court finds as a matter of law that his conduct was a breach of the fiduciary duties Defendant Middleton owed UBH as outlined in Restatement (Third) of Agency §§ 8.01-8.03. *See supra* at 8; *see also Rash v. J.V. Intermediate*, *Ltd.*, 498 F.3d 1201, 1210 (10th Cir. 2007) (finding employee breached his fiduciary duty to employer when he failed to disclose his ownership of a business the employee then hired to perform work for his employer). This is true even if Defendant Middleton believed he was helping UBH, made no profits, and completed the subcontracting work to UBH's benefit.[10] *See Wilshire Oil Co. of Tex. v. Riffe*, 406 F.2d 1061, 1062–63 (10th Cir. 1969) (holding, after finding a breach of fiduciary duty: "The fact that the [employer] may have made money does not prove that no breach took place[,] nor does it excuse one . . . . The same may be said about whether the officer considered that he was acting properly or in good faith.").

Although Defendant Middleton does not raise it, his prior affidavit suggests the possibility of one defense – consent from a UBH's manager. The Court addresses this potential defense in an abundance of caution.

Defendant Middleton averred that Mr. Mike Anderson is a regional manager for UBH and "was aware of at least some of [Insideout's subcontracting] activities and gave implied consent to them." [Doc. No. 18, Ex. 1 at 3]. This would implicate Restatement (Third) of Agency § 8.06, which states:

---

[10] *See* [Doc. No. 18, Ex. 1 at 3] (Defendant Middleton's averment that "I formed Insideout to complete sub-contractor work on UBH projects . . . . UBH paid Insideout for the approved work. All of the work was completed. I paid the sub-contractors through Insideout. I did this to speed up completion of UBH projects. I did not keep any of the money paid by UBH to Insideout. It was all paid out to the subcontractors hired to complete the work.").

>(1) Conduct by an agent that would otherwise constitute a breach of duty as stated in §§ 8.01, 8.02, 8.03, 8.04, and 8.05 does not constitute a breach of duty if the principal consents to the conduct, provided that
>
>(a) in obtaining the principal's consent, the agent
>
>>(i) acts in good faith,
>>
>>(ii) discloses all material facts that the agent knows, has reason to know, or should know would reasonably affect the principal's judgment unless the principal has manifested that such facts are already known by the principal or that the principal does not wish to know them, and
>>
>>(iii) otherwise deals fairly with the principal; and
>
>(b) the principal's consent concerns either a specific act or transaction, or acts or transactions of a specified type that could reasonably be expected to occur in the ordinary course of the agency relationship.
>
>. . . .

Restatement (Third) of Agency § 8.06.

As evidence to support his averment, Defendant Middleton attached a text message exchange between himself and Scott Condict, another then-UBH employee. In relevant part, that exchange was as follows:

>Defendant Middleton: "JC said Mike asked about me doing something on the side?"
>
>Mr. Condict: "Yep. He thinks it's roofing."
>
>. . .
>
>Mr. Condict: "He just told me to make sure nothing else was affecting your sales at UBH."

[Doc. No. 18, Ex. 2 at 7].

The Court finds this evidence is insufficient to satisfy § 8.06's requirements. First, Defendant Middleton's evidence constitutes inadmissible hearsay, and "Tenth Circuit precedent

dictates that hearsay contained within an affidavit remains inadmissible hearsay beyond judicial consideration at summary judgment." *Friends of Animals v. Bernhardt*, __ F.4th __, 2021 WL 4771619, at *11 (10th Cir. Oct. 13, 2021).  Second, even if the Court could consider it, the evidence demonstrates that Defendant Middleton did not "act[] in good faith" in obtaining Mr. Anderson's consent nor did he disclose all the material facts.  In fact, the evidence establishes just the opposite – that at best, Mr. Anderson believed Defendant Middleton was running a roofing company on the side.  This falls fatally short of proving that Defendant Middleton disclosed to Mr. Anderson both that Defendant Middleton owned and had hired Defendant Insideout to perform subcontracting work for UBH or that Mr. Anderson had consented to the arrangement.  *See, e.g., Apache Tribe of Oklahoma v. Graves*, 280 P.3d 978, 981-82 (Okla. 2012) (holding that "[e]ven if a principal ratifies an agent's unauthorized act, the agent is not released from liability to the principal if . . . the principal 'is caused to ratify by the misrepresentation . . . of the agent'" (citation omitted)).

   **b.**  **Defendant 10 Roofing**

Regarding Defendant 10 Roofing, the undisputed evidence establishes that Defendant Middleton created the home building company in March 2020, while he was still employed at UBH.  Then, in late March or early April 2020, Defendant Middleton met with UBH clients John and Laurie Morris and informed them that Defendant 10 Roofing could complete their home faster and for less money.  Defendant 10 Roofing eventually built the Morris's home using a UBH plan, with handwritten modifications, which Defendant Middleton altered to remove the UBH label.  Around the same time, Defendant 10 Roofing used UBH's Aspen 60 Plan to build a home for Ms. Gregory.

With these undisputed facts – even construed in a light most favorable to Defendant Middleton – the Court finds as a matter of law that Defendant Middleton breached his duties of

loyalty to UBH as described in Restatement (Third) of Agency §§ 8.04 and 8.05.  *See supra* at 8; *see also Am. Exp. Fin. Advisors, Inc. v. Topel*, 38 F. Supp. 2d 1233, 1247 (D. Colo. 1999) (granting summary judgment because "[a]s the undisputed facts make clear, [the defendant] solicited customers for his new venture while he was still affiliated with [plaintiff's company]").  That is, no reasonable juror could disagree that Defendant Middleton used Defendant 10 Roofing to directly compete with UBH in the home building business, and used UBH's proprietary house plans in so doing, all while still acting as UBH's agent.  And, for the reasons discussed above, Defendant Middleton's assertion that Mr. Anderson was aware of Defendant 10 Roofing's existence does not provide a valid defense.  *See supra* at 10-11.

### 4. Damages

Having concluded, as a matter of law, that Defendant Middleton breached the duties of loyalty owed to UBH, the Court must address whether UBH has established it was damaged as a result.  *See supra* at 6-7.  The Court finds it has.

"When a corporate officer engages in activities which constitute a breach of his duty of loyalty . . ., he is not entitled to compensation for services during such a period of time although part of his services may have been properly performed."  *Wilshire Oil Co. of Tex.*, 406 F.2d at 1062; *see also MSC Safety Sols., LLC v. Trivent Safety Consulting, LLC*, No. 19-CV-00938-MEH, 2020 WL 7425874, at *15 (D. Colo. Dec. 18, 2020) (holding plaintiff may recover compensation paid to an employee while that employee engaged in disloyal acts).  Thus, at a minimum, UBH has established it was damaged to the extent it compensated Defendant Middleton during the time in which he was in violation of his fiduciary duties.

### 5. Summary

Based on the foregoing, the Court GRANTS Plaintiff's motion for summary judgment on Count One alleging breach of fiduciary duty against Defendant Middleton.

### B. Tortious Interference with Contract or Prospective Economic Advantage (Count Seven)

In Count Seven, Plaintiff alleges Defendant Middleton tortiously interfered with its contract or prospective contracts with two customers – the Morrises and Ms. Gregory. However, Plaintiff seeks summary judgment only on its prospective economic advantage theory.[11] Thus the Court focuses only on that argument.

#### 1. Elements for Tortious Interference with a Prospective Economic Advantage

To prove tortious intentional interference with a prospective economic advantage, UBH must show: "(1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectance on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted." *Loven v. Church Mut. Ins. Co.*, 452 P.3d 418, 425 (Okla. 2019).

---

[11] To prove tortious interference with a contract, UBH must show, in relevant part, that "a valid enforceable contract" existed between it and the Morrises and Ms. Gregory, respectively. *Oklahoma Land Holdings, LLC v. BMR II, LLC*, No. CIV-17-1036-D, 2020 WL 4284806, at *10 (W.D. Okla. July 27, 2020). However, Plaintiff has failed to offer any evidence that either the Morrises or Ms. Gregory had entered a valid enforceable contract at the time of Defendant Middleton's alleged interference. *See* Pl.'s Mot. at Exs. 30, 39 (showing only signed proposals to build).

### 2. The Existence of a Valid Business Relationship and Defendant Middleton's Knowledge of the Same

The undisputed facts establish that both the Morrises and Ms. Gregory sought out UBH for homebuilding services and each signed a proposal letter indicating a desire to have UBH build their homes. Additionally, the facts clearly establish that Defendant Middleton was aware of the expectant business relationship between UBH and the Morrises and Ms. Gregory, respectively. The Court finds this sufficient to satisfy the two elements as a matter of law.

### 3. An Intentional Interference Inducing or Causing a Breach or Termination of the Relationship or Expectancy

There is no genuine dispute that Defendant Middleton told the Morrises that Defendant 10 Roofing could build their home faster and for less money than UBH and, based on those assertions, the Morrises terminated their relationship with UBH. Plaintiff has thus satisfied this element as it relates to the Morrises.

However, construing the facts in a light most favorable to Defendant Middleton, the Court reaches the opposite decision with regards to Ms. Gregory. That is, UBH sent Ms. Gregory a letter denying her request for financing. Defendant Middleton *thereafter* informed Ms. Gregory that he could find her outside financing and, after successfully doing so, Defendant 10 Roofing built her home. Accordingly, a reasonable juror could conclude that UBH had already terminated its relationship with Ms. Gregory before Defendant Middleton intervened. Accordingly, Plaintiff cannot prevail, as a matter of law, on its claim as it relates to Ms. Gregory.

### 4. Damages

Though the exact amount remains unclear, Plaintiff was obviously damaged when the Morrises terminated their relationship with UBH and allowed Defendant 10 Roofing, and not UBH, to build their home. *See Ace Oilfield Rentals, LLC v. W. Dakota Welding & Fabrication*,

LLC, No. CIV-15-672-D, 2021 WL 4556234, at *4 (W.D. Okla. Oct. 5, 2021) (granting summary judgment on a claim for tortious interference with prospective economic advantage claim after finding, in relevant part, that "the interference proximately damaged [plaintiff], because it lost the profits it would have realized had it been able to complete sales to [the business clients]"). Thus, Plaintiff has succeeded in establishing this element as a matter of law.

### 5. Summary

Based on the foregoing, the Court GRANTS Plaintiff's motion for summary judgment on Count Seven as it relates to the Morrises but DENIES the same as the claim relates to Ms. Gregory.

### C. Conspiracy (Count Eight)

Finally, Plaintiff seeks summary judgment on its claim that Defendant Middleton and Defendant 10 Roofing conspired to tortiously interfere with UBH's relationship with the Morrises and Ms. Gregory. But while Defendant Middleton listed his girlfriend as Defendant 10 Roofing's owner, the undisputed facts establish that Defendant Middleton created and controlled the business. And the Tenth Circuit has held "that a corporation and its employee do not constitute the 'two or more persons required for a civil conspiracy" and reiterated that "[o]ther courts have also held that a conspiracy cannot exist involving only a corporation and its officers or employees." *Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 52 (10th Cir. 1963). Indeed, finding that Defendant Middleton conspired with his own corporation would be "tantamount to [finding that] a person conspir[ed] with himself." *Judson v. Walgreens Co.*, No. 20-CV-00159-CMA-STV, 2021 WL 1207445, at *4 (D. Colo. Mar. 31, 2021); *see also Skycam, Inc. v. Bennett*, No. 09-CV-294-GKF-FHM, 2011 WL 13096624, at *9 (N.D. Okla. June 21, 2011). Accordingly, Plaintiff's motion for summary judgment on Count Eight is DENIED.

## V.     Conclusion

Based on the foregoing, Plaintiff's motion for summary judgment [Doc. No. 81] is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff is GRANTED judgment as a matter of law against Defendant Middleton on Count Two and on Count Seven, as it relates to the Morris's home.  Conversely, the Court DENIES Plaintiff's motion for summary judgment on Count Seven, as it relates to the Gregory home, and on Count Eight (asserted against Defendant 10 Roofing).

IT IS SO ORDERED this 2nd day of November, 2021.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE